O

# United States District Court
# Central District of California

| | |
|---|---|
| ESTATE OF GREGORY MARTINEZ et al., | Case № 2:23-cv-05586-ODW (JPRx) |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [38]** |
| v. | |
| COUNTY OF LOS ANGELES et al., | |
| Defendants. | |

## I.    INTRODUCTION

Plaintiffs Judy Martinez, individually and as successor-in-interest to Decedent Gregory Martinez, along with Gregory Martinez, Jr., Timothy Martinez, Mathew Martinez, and Aurora England (collectively "Plaintiffs"), bring this wrongful death action against Defendants County of Los Angeles ("County"), the Los Angeles Sheriff's Department ("LASD"), Sheriff Alejandro Villanueva, in his individual and official capacities, Deputy Corona, Deputy Baltodano, Ramirez-Hernandez,[1] and Lieutenant Reedy, in their individual capacities (collectively "Defendants").  (*See* First Am. Compl. ("FAC"), ECF No. 34.)  The County, LASD, Villanueva, and Baltodano ("Moving Defendants") move to dismiss certain of Plaintiffs' claims pursuant to

---

[1] Plaintiffs do not allege Ramirez-Hernandez's first name, title, or position.

Federal Rule of Civil Procedure ("Rule") 12(b)(6).  (Mot. Dismiss ("Motion" or "Mot."), ECF No. 38.)  For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** the Motion.[2]

## II.    BACKGROUND

All factual references derive from Plaintiffs' First Amended Complaint or attached exhibits, unless otherwise noted.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that well-pleaded factual allegations are accepted as true for purposes of a motion to dismiss).

**A.    Factual Background**

On June 3, 2022, at approximately 5:00 p.m., Gregory Martinez ("Martinez") was arrested and taken into custody by LASD deputies.  (FAC ¶ 20.)  Immediately upon arrest, Martinez and his wife, Judy Martinez, informed the LASD deputies that Martinez suffered from serious medical issues, including Alzheimer's and dementia. (*Id.*)  Martinez and Judy Martinez also advised the arresting LASD deputies that Martinez required his medications.  (*Id.*)  The LASD deputies stated that they would take Martinez to the hospital.  (*Id.*)  They did not.  (*Id.*)  The LASD deputies also did not give Martinez his medications.  (*Id.*)

Martinez was then booked into Men's Central Jail ("MCJ") and underwent a preliminary medical and psychological screening.  (*Id.* ¶ 21.)  Despite his reported medical issues, he was placed in the general population without any designation to alert staff of his medical conditions and the need for additional monitoring or specialty care. (*Id.* ¶ 22.)  Staff at MCJ also did not give Martinez his medications.  (*Id.*)

The following morning, June 4, 2022, Martinez's daughter called LASD and MCJ staff informed her that Martinez had a "difficult night" and they were not equipped to handle him.  (*Id.* ¶ 23.)  Accordingly, LASD transferred Martinez to Twin Towers Correctional Facility ("Twin Towers") that same day.  (*Id.* ¶ 24.)  Upon intake

---

[2] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

at Twin Towers, Ramirez-Hernandez conducted an initial assessment of Martinez, during which Martinez was unable to answer questions due to his dementia.  (*Id.* ¶ 25.)    Ramirez-Hernandez concluded that Martinez suffered from dementia and assigned him to a single cell in the Inmate Reception Center ("IRC").  (*Id.*)

On June 5, 2022, Judy Martinez spoke with Twin Towers staff and asked if Martinez was receiving his medications.  (*Id.* ¶ 26.)  Staff did not respond.  (*Id.*)  Judy Martinez again informed staff that Martinez had Alzheimer's and dementia and "could not comprehend what was occurring."  (*Id.*)

The next day, on June 6, 2022, Martinez was housed in the IRC cell around 3:00 p.m.  (*Id.* ¶ 28.)  For the next several hours, Deputies Corona and Baltodano conducted Title 15 Safety Checks[3] on Martinez, logging him as "laying on floor/breathing."  (*Id.* ¶¶ 28–29.)  At 7:27 p.m., Corona and Baltodano found Martinez unresponsive.  (*Id.*)  This prompted Twin Towers staff to address Martinez's medical needs.  (*Id.*)  Martinez had a perilously low blood glucose level of 17.[4]  (*Id.* ¶ 30.)  Staff administered glucose to Martinez before paramedics arrived to transfer him to LAC-USC Medical Center.  (*Id.*)

On June 7, 2022, Judy Martinez received a call from the treating hospital informing her that Martinez was "very sick" and not expected to "live more than a few hours."  (*Id*. ¶ 32.)  Martinez died later that day.  (*Id.*)

## B.    Procedural History

Based on the above facts, Plaintiffs filed this wrongful death action against Defendants.  (Compl., ECF No. 1.)  The Court partially granted Defendants' initial motion to dismiss, and on May 13, 2024, Plaintiffs filed their First Amended Complaint.  (Order Mot. Dismiss Compl. ("Prior Order"), ECF No. 33; FAC.)

---

[3] *See* Cal. Code Regs. tit. 15 § 1027.5 (2024).

[4] Plaintiffs allege the "base level" for blood glucose is 300, (FAC ¶ 30), but according to the World Health Organization, a normal fasting blood sugar level is between 70–100 mg/dL, *World Health Organization*, Mean Fasting Blood Glucose, https://www.who.int/data/gho/indicator-metadata-registry/imr-details/2380 (last visited July 29, 2024).  Regardless, a blood glucose level of 17 is perilously low.

In the First Amended Complaint, Plaintiffs contend Defendants deliberately failed to address Martinez's health issues and needs, despite receiving information regarding his medical conditions and observing clear signs of his distress.  (FAC ¶¶ 27, 34.)  Plaintiffs further allege that the County's "patterns and practices of not conducting proper and timely Title 15 welfare and safety checks" led to Twin Towers staff's oversight of Martinez's medical emergency until it was too late.  (*Id.* ¶ 34.)

Based on the foregoing, Plaintiffs assert five causes of action against specific Defendants pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution: (1) failure to protect from harm; (2) failure to provide medical care; (3) deprivation of the right to familial relationship with decedent; (4) municipal policies, customs, and practices causing constitutional violations, (*Monell*[5] claim); and (5) supervisory liability—failure to train, supervise, and discipline.  (*Id.* ¶¶ 36–123.)  Plaintiffs also assert four causes of action against specific Defendants under California law: (6) negligence—wrongful death; (7) negligence—medical malpractice; (8) violation of California Government Code section 845.6; and (9) violation of California Civil Code section 52.1 (Bane Act claim).  (*Id.* ¶¶ 124–54.)

Defendants now move to dismiss Plaintiffs' first through seventh and ninth causes of action pursuant to Rule 12(b)(6).  (Mot. 2–3.)  The Motion is fully briefed.  (Opp'n, ECF No. 39;[6] Reply, ECF No. 40.)

### III.    LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading

---

[5] *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

[6] Plaintiffs filed their Opposition one day late.  While the Court encourages all parties to meet the mandated deadlines, Defendants do not appear to have been unduly prejudiced by the delay as they were able to file a fulsome and timely Reply.  The Court will therefore consider the case on the merits but will be less tolerant of any late filings moving forward.

requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Thus, leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## IV.    DISCUSSION

Defendants argue the Court should dismiss Plaintiff's first through seventh and ninth causes of action because Plaintiffs fail to state these claims. (Mot. 10.) The Court considers the federal causes of action first before turning to the state law claims.

**A.    Violations of the Fourteenth Amendment[7]—Baltodano**

Plaintiffs assert their first three § 1983 causes of action for violation of the Fourteenth Amendment—failure to protect, failure to provide medical care, and deprivation of familial relationship with decedent—against Defendants Ramirez-Hernandez, Corona, Baltodano, and Reedy. (FAC ¶¶ 36–74.) However, Ramirez-Hernandez, Corona, and Reedy have yet to be served or appear in the case. As such, Moving Defendants seek to dismiss these causes of action only on behalf of Baltodano. (Mot. 14–16.) The Court focuses its analysis accordingly on Baltodano's alleged conduct and finds that Plaintiffs sufficiently plead these three causes of action.

*1.    Failure to Protect*

To state a valid claim for a failure-to-protect violation of the Fourteenth Amendment, Plaintiffs must allege that Baltodano acted with "deliberate indifference." *Castro*, 833 F.3d at 1068 (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). To plead deliberate indifference, Plaintiffs must allege four elements: (1) "The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined"; (2) "Those conditions put the plaintiff at substantial risk of suffering serious harm"; (3) "The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious"; and (4) "By not taking such measures, the defendant caused the plaintiff's injuries." *Id.* at 1071.

With regard to the first element, Defendants argue that Baltodano "had no involvement or say in [Martinez's] placement at IRC," and therefore made no intentional decision regarding Martinez's conditions of confinement. (Mot. 14.) Defendants are correct to the extent that Plaintiffs allege Ramirez-Hernandez, not

---

[7] Plaintiffs bring the first three causes of action under the Fourteenth Amendment, as Martinez was a pre-trial detainee. (*See, e.g.*, FAC ¶ 50.) *See also Castro v. County of Los Angeles*, 833 F.3d 1060, 1068 (9th Cir. 2016) (noting that a pretrial detainee may sue for injuries suffered while in custody under the Fourteenth Amendment's Due Process Clause).

Baltodano, assigned Martinez to IRC.  (*See* FAC ¶ 25.)  However, assignment to IRC is just one aspect of Martinez's confinement.  Plaintiffs allege that Baltodano made intentional decisions regarding other conditions of Martinez's confinement. Specifically, Plaintiffs allege that Baltodano "failed to conduct proper required welfare and safety checks," and marked Martinez as "laying on floor/breathing" for several hours while his blood sugar plummeted.  (*Id.* ¶¶ 28–30, 43.)  Through these allegations, Plaintiffs sufficiently allege that Baltodano's method of conducting welfare checks was an intentional act affecting the conditions under which Martinez was confined.

Similarly, regarding the second and fourth *Castro* elements, the Court finds Plaintiffs have sufficiently alleged that the conditions (here, the method of conducting the welfare checks) put Martinez at risk of suffering serious harm and ultimately contributed to Martinez's injury, because Martinez was harmed by the delayed intervention.

The third element—whether Baltodano failed to take reasonably available measures to lessen the risk, even though a reasonable officer would have been aware of the risk—is a factual question.  *See Castro*, 833 F.3d at 1071 (stating the determination as to whether a defendant's actions were objectively unreasonable "turn[s] on the 'facts and circumstances of each particular case.'" (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015))).  The "mere lack of due care by a state official" does not amount to a constitutional violation; plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard."  *Id.*

Defendants argue that Baltodano did not know about Martinez's medical issues, implying that Baltodano's conduct could not have risen to reckless disregard without such knowledge.  (*See* Mot. 17 ("There are no allegations that Deputy Baltodano knew or should have known of [Martinez's] alleged medical and mental health needs.").)  The Court rejects this argument.  At the pleading stage, it is sufficient that Plaintiffs allege that Martinez's family members informed LASD and Twin Towers

staff multiple times about Martinez's medical issues and required medications.  (*See* FAC ¶¶ 20, 23, 26.)   Whether Baltodano was ever personally aware of this information is a factual question to be resolved at a later stage in the litigation. Moreover, failure-to-protect claims rely on an objective standard for the deliberate indifference determination, making Baltodano's subjective awareness of Martinez's medical issues less relevant than Defendants imply.  *See Castro*, 833 F.3d at 1069–1071 (holding that, in light of *Kingsley*, failure-to-protect claims brought under the Fourteenth Amendment should be analyzed under an objective framework).

Furthermore, reading the facts in the light most favorable to the Plaintiffs, Plaintiffs plausibly allege that Baltodano failed to take reasonable measures to abate the risk to Martinez's health.  For example, based on the facts alleged, it is plausible that a reasonable officer should have done more than visually confirm Martinez was breathing, for instance by attempting to speak to him or elicit a response, to ensure he was conscious.[8]   It is also plausible that Martinez's difficulty communicating upon intake and his placement in a single IRC cell in light of his medical conditions would put a reasonable officer on notice that simple visual safety checks were insufficient. *See, e.g.*, *Sandoval v. County of San Diego*, 985 F.3d 657, 682–83 (9th Cir. 2021) (explaining that a jury may consider the assignment of a detainee to an individual cell upon intake due to observed unusual behavior as an indication that the detainee requires additional observation).   Accepting the factual allegations in a light most favorable to Plaintiffs at this pleading stage, Plaintiffs plausibly allege that Baltodano's actions amounted to reckless disregard, satisfying the third element.  *See Carrier v. County of Los Angeles*, No. 2:17-cv-7231-MRW, 2019 WL 8161143, at *4 (C.D. Cal. Dec. 23, 2019 (emphasizing that the third and fourth *Castro* factors—the

---

[8] Indeed, LASD's internal manual states a follow-up beyond visual confirmation of wellness can be appropriate where an inmate's condition is uncertain.  *See* LASD Custody Division Manual, *4-11/030.00 Inmate Safety Checks*, https://pars.lasd.org/Viewer/Manuals/14249/Content/12983# (last visited Aug. 13, 2024) (stating "Personnel conducting inmate safety checks, shall look at the inmates for signs of life (e.g. breathing, talking, movement, etc.). . . . Should there be any doubt regarding an inmate's condition, staff shall attempt to elicit a response from the inmate.").

officers' knowledge and the reasonableness of their acts—are factual inquiries for the jury).

Accordingly, the Court finds Plaintiffs sufficiently plead their first cause of action for failure-to-protect against Baltodano, and therefore **DENIES** the Motion as to this claim.

### 2.    *Failure to Provide Medical Care*

In their second cause of action, Plaintiffs allege that Baltodano failed to provide Martinez with adequate medical care while he was in detention.  (FAC ¶¶ 49–61.)

"Claims for violations of the right to adequate medical care 'brought by pretrial detainees against individual defendants under the Fourteenth Amendment' must be evaluated under an objective deliberate indifference standard." *Gordon v. County of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018) (quoting *Castro*, 833 F.3d at 1070). Therefore, the four-part deliberate indifference test outlined above also applies to Plaintiffs' medical care claim.  *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) ("[There is] no significant distinction between claims alleging inadequate medical care and those alleging inadequate 'conditions of confinement.' Indeed, the medical care a prisoner receives is just as much a 'condition' of his confinement as . . . the protection he is afforded against other inmates.").

As discussed above, Plaintiffs' allegations plausibly support that Baltodano acted with reckless disregard for Martinez's health by conducting the welfare checks unreasonably and thus delaying medical assistance.  As the officer conducting the mandatory safety checks, Baltodano was responsible for detecting and alerting others to Martinez's medical emergency.  Both parties essentially agree that assessing Martinez's well-being was part of Baltodano's role; they disagree over whether Baltodano's actions were timely and appropriate, or, in other words, reasonable. However, as noted, the reasonableness of Baltodano's actions is a factual question, and not for the Court at this pleading stage.

1    Accordingly, the Court finds Plaintiffs sufficiently plead their second cause of
2    action for failure to provide adequate medical care against Baltodano, and therefore
3    **DENIES** the Motion as to this claim.

4        *3.    Deprivation of a Familial Relationship*

5        Plaintiffs allege in their third cause of action that Baltodano's conduct deprived
6    Plaintiffs of Martinez's familial relationship.  (*See* FAC ¶¶ 62–74.)

7        Parents and children have a constitutional right to one another's companionship,
8    and in cases concerning the medical care of pretrial detainees, courts apply a standard
9    of deliberate indifference.  *See Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010)
10   ("This circuit has recognized that parents have a Fourteenth Amendment liberty
11   interest in the companionship and society of their children."); *Porter v. Osborn*,
12   546 F.3d 1131, 1137–1139 (9th Cir. 2008) (explaining that an official's deliberate
13   indifference is sufficient to shock the conscience and can support a Fourteenth
14   Amendment claim); *Castro*, 833 F.3d at 1068 (applying the deliberate indifference
15   standard to a prison official's failure to provide medical care to a pretrial detainee).
16   Accordingly, to analyze Plaintiffs' claim for deprivation of familial relationship, the
17   Court again applies the deliberate indifference test.

18       For the reasons explained above, Plaintiffs' allegations plausibly support the
19   conclusion that Baltodano's method of performing the safety checks amounted to
20   deliberate indifference.  Moving Defendants argue that Baltodano's behavior does not
21   "shock the conscious [sic]." (Mot. 17.)  However, this a question of fact for resolution
22   at a later stage of litigation—by alleging deliberate indifference, Plaintiffs have
23   already done enough to support their claim at the pleading stage.  *See Porter*, 546 F.3d
24   at 1137 (explaining that "deliberate indifference" is a "subset" of the type of behavior
25   that "shocks the conscience").   Furthermore, it is entirely plausible that leaving
26   Martinez lying on the ground in his cell for several hours while he loses consciousness
27   due to treatable medical conditions amounts to behavior that shocks the conscience.
28   *See Est. of Prasad ex rel. Prasad v. County of Sutter*, 958 F. Supp. 2d 1101, 1106–09,

1  1116 (E.D. Cal. 2013) (finding plaintiffs sufficiently pleaded deliberate indifference
2  that shocks the conscience by alleging that prison officials failed address decedent's
3  worsening *Staphylococcus aureus* infection until it was too late).

4      Accordingly, the Court finds Plaintiffs sufficiently plead their third cause of
5  action for deprivation of a familial relationship against Baltodano, and therefore
6  **DENIES** the Motion as to this claim.

7  **B.    Municipal Liability, *Monell* Claim—County & LASD**

8      In their fourth cause of action, Plaintiffs allege that the County's and LASD's
9  policies, customs, and practices were the moving force behind the violations of
10 Martinez's constitutional rights, and therefore the County and LASD are liable for
11 Martinez's death pursuant to *Monell v. Department of Social Services*, 436 U.S. 658
12 (1978).  (FAC ¶¶ 75–109.)  Defendants argue that Plaintiffs fail to sufficiently allege
13 *Monell* liability.  (Mot. 18–20.)  The Court finds that Plaintiffs fail to state a *Monell*
14 claim.

15      To state a claim for *Monell* liability, a plaintiff must allege a constitutional
16 injury that results from a custom or policy of the municipality or a failure to
17 adequately train the municipality's police officers.  *Monell*, 436 U.S. at 690–91; *City*
18 *of Canton v. Harris*, 489 U.S. 378, 388 (1989).  Where *Monell* liability is based on a
19 policy or custom, a plaintiff must allege several threshold requirements: (1) "[the
20 plaintiff] possessed a constitutional right of which [they were] deprived"; (2) "the
21 municipality had a policy"; (3) "this policy amounts to deliberate indifference to the
22 plaintiff's constitutional right"; and (4) "the policy is the moving force behind the
23 constitutional violation."  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir.
24 2011) (first alteration in original).  "Failure to train may amount to a policy of
25 'deliberate indifference,' if the need to train was obvious and the failure to do so made
26 a violation of constitutional rights likely."  *Id*. (quoting *Canton*, 489 U.S. at 390).

27      The Court previously dismissed Plaintiffs' *Monell* claim with leave to amend
28 because Plaintiffs failed to "alleg[e] the specific constitutional right that Martinez

possessed and was subsequently deprived." (Prior Order 7.) Now, in their First Amended Complaint, Plaintiffs remedy this error by clarifying they are alleging a violation of Martinez's Fourteenth Amendment right to be free from harm and receive adequate medical care. (FAC ¶ 79.) Accordingly, the Court begins with the second requirement—that "the municipality had a policy." *Dougherty*, 654 F.3d at 900.

To establish that the municipality had a policy, a plaintiff must do more than merely allege that a municipal defendant "maintained or permitted an official policy . . . of knowingly permitting . . . the type of wrongs" a plaintiff alleges elsewhere in the complaint. *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012). Rather, to state a cause of action for *Monell* liability, a plaintiff must: (1) "identify the challenged policy/custom"; (2) "explain how the policy/custom is deficient"; (3) "explain how the policy/custom caused the plaintiff harm"; (4) "reflect how the policy/custom amounted to deliberate indifference, *i.e.* show how the deficiency involved was obvious and the constitutional injury was likely to occur." *Young v. City of Visalia*, 687 F. Supp. 2d 1155, 1163 (E.D. Cal. 2010).

Here, Plaintiffs allege that Defendants had multiple policies which contributed to the deprivation of Martinez's constitutional rights. (*See* FAC ¶¶ 76–78.) However, Plaintiffs do not provide any factual support to show the existence of these policies, making the allegations conclusory and speculative. For example, Plaintiffs allege that Defendants have a policy to "allow and encourage" deputies to submit inaccurate safety check reports, but Plaintiffs provide no examples of this behavior occurring or explain why they believe the deputies are not thorough or sincere when conducting the checks. (*See generally id.* ¶ 76.) Similarly, Plaintiffs allege there is a policy to "cover up violations of constitutional rights" by ignoring incidents of such violations, but Plaintiffs again provide no support for the existence of such a policy. (*See generally id.*) Without factual support, these claims are conclusory and fall short of the pleading requirements of Rule 12(b)(6). *See Iqbal*, 556 U.S. at 679 ("Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not shown—that the pleader is entitled to relief."
(cleaned up)).

Plaintiffs also allege that there is a widespread and longstanding custom of denying inmates in Defendants' facilities reasonable medical care, and that this custom is another moving force behind Martinez's constitutional violations.  (*Id.* ¶ 80.)   To support this assertion, Plaintiffs provide substantial information about individual deaths from medical complications in County jails between 2018 and 2023, arguing that these deaths are similar to Martinez's death and therefore establish the County's and LASD's custom of denying medical care.  (*Id.* ¶¶ 80–106.)   However, although Plaintiffs list numerous inmate deaths from medical complications, Plaintiffs offer nothing to support that those deaths were all somehow caused by the alleged custom of denying medical care.  Indeed, the described inmates may have died from medical complications even had Defendants followed the correct medical procedure perfectly in every instance.

While Plaintiffs allege sufficient facts to support an inference that at least some of the named Defendants acted with reckless disregard for Martinez's health and rights, Plaintiffs do not provide sufficient facts to support an inference that the deceased inmates identified in the First Amended Complaint were treated similarly to Martinez, or that their deaths were somehow caused by a custom of denying inmates in Defendants' facilities reasonable medical care.

Accordingly, the Court finds Plaintiffs fail to sufficiently plead their fourth cause of action for *Monell* liability against the County and LASD.  As such, the Court **GRANTS** the Motion as to this claim, with leave to amend.

## C.    Supervisory Liability—Sheriff Villanueva[9]

In their fifth cause of action for supervisory liability, Plaintiffs allege that Villanueva is also liable for Martinez's death due to his failure to train, supervise, and

---

[9] Plaintiffs also bring this cause of action against Defendant Reedy.  (*See* FAC ¶¶ 110–23.)  Reedy has not yet appeared, and Moving Defendants address the fifth cause of action only as to Villanueva.  (*See* Mot. 21.)  Thus, the Court considers the fifth cause of action only with respect to Villanueva.

discipline his subordinates.  (FAC ¶¶ 110–23.)  Defendants argue that Plaintiffs fail to allege any facts supporting a causal connection between Villanueva and the violation of Martinez's constitutional rights.  (Mot. 20–21.)  The Court finds Plaintiffs fail to state a claim against Villanueva for supervisory liability.

A defendant may be held liable as a supervisor under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).  For instance, in *Starr v. Baca*, 652 F.3d 1202, 1216–17 (9th Cir. 2011), the court found the plaintiff sufficiently pleaded supervisory liability against Los Angeles County Sheriff Leroy Baca.  There, the plaintiff alleged that prison officials violated his constitutional rights by failing to protect him from an attack by a fellow inmate while in custody, and that Baca had received reports documenting the systematic problems with ongoing inmate attacks and acquiesced in his subordinate prison officials' unconstitutional conduct  *Id.* at 1204–05.  The Ninth Circuit determined that the plaintiff's detailed factual allegations specifically connected Baca's deliberate indifference to the danger posed from the ongoing attacks with the plaintiff's harm.  *Id.* at 1216–17.

In their fifth cause of action, Plaintiffs do not allege that Villanueva was personally involved in denying Martinez protection and medical care, relying instead on the causal connection prong to state this claim.  (*See* FAC ¶¶ 110–23.)  Plaintiffs argue that Villanueva was aware of the pattern of "detainees dying in his jails" due to his subordinates' failure to provide medical care, and yet Villanueva failed to train, supervise, or discipline his subordinates to prevent the ongoing constitutional violations.  (Opp'n 10–11.)  Plaintiffs allege that, in 2022—the same year Martinez died—forty-three other inmates died in Defendants' jails.[10]  (FAC ¶ 116.)  Plaintiffs

---

[10]  Plaintiffs break down the forty-three deaths into the following causes: eight overdoses; three homicides; four suicides; twenty natural causes; one undetermined; two accidental; and five pending investigation.  (FAC ¶ 116.)

argue that, as the head of LASD, this information would "have been revealed" to Villanueva, meaning he should have been on notice and is therefore liable for his failure to act and acquiescence in the constitutional violations. (*See id.* ¶¶ 116–19.)

However, this cause of action suffers from the same deficiency as Plaintiffs' fourth cause of action: Plaintiffs do not adequately support their contention that the deaths of inmates at Defendants' facilities were caused in some way by Defendants violating those inmates' constitutional rights. As Plaintiffs fail to establish that the listed inmate deaths are the consequence of any constitutional violations, it follows that they also cannot show that Villanueva knew or should have known the deaths were caused by his subordinates' unconstitutional actions. *See Dubner v. City & County of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001) (stating that a plaintiff may establish supervisory liability through causal connection by establishing a supervisor "knowingly refused to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury"); *Cf. Starr*, 652 F.3d at 1209–1212, 1216 (finding sufficient allegations that Baca knew or should have known about danger posed from inmate attacks in the county jails because he received several reports on the systemic problem).

Accordingly, the Court finds Plaintiffs fail to sufficiently plead their fifth cause of action for supervisory liability against Villanueva. As such, the Court **GRANTS** the Motion as to this claim, with leave to amend.

**D.    Negligence**

Plaintiffs assert two causes of action for negligence, the sixth cause of action for wrongful death against all Defendants save Villanueva, and the seventh cause of action for medical malpractice against Doe Defendants, the County, and LASD.[11] (FAC ¶¶ 124–37.)

---

[11] As above, the Court limits its analysis to only the Moving Defendants against whom Plaintiffs assert these causes of action: the County, LASD, and Baltodano.

*1. Wrongful Death*

To state a claim for negligent wrongful death, plaintiffs must plead "(1) a wrongful act or neglect on the part of one or more persons that (2) causes (3) the death of another person." *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 390 (1999) (cleaned up) (quoting Cal. Civ. Proc. Code § 377.60). A "county ordinarily is not liable if the employee's act or omission would not give rise to a cause of action against that employee[,] or if the employee is immune from liability." *Walker v. County of Los Angeles*, 192 Cal. App. 3d 1393, 1397 (1987) (citations omitted). "Thus, the county's liability depends on the liability of its employee[s]." *Id.*; *see* Cal. Gov't Code § 815.2(a) ("A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would . . . have given rise to a cause of action against that employee or his personal representative.").

Here, Plaintiffs allege that Baltodano owed duties of reasonable and due care to Plaintiffs and Martinez and breached those duties, causing harm including Martinez's death. (FAC ¶¶ 127–29; *see also id.* ¶¶ 25, 28–30 (alleging that Martinez had been assessed as suffering from dementia, classified and specially placed in an IRC single cell, and that Baltodano was charged with responsibly conducting required safety checks, yet failed to note Martinez's medical emergency for several hours).) Plaintiffs further allege that the County and LASD are vicariously liable for Baltodano's breaches and the resulting harm. (*See id.* ¶ 130.) These allegations are sufficient at this stage to support Plaintiffs' assertion that Baltodano was negligent as to the care of Martinez. Correspondingly, these allegations are also sufficient to support Plaintiffs' assertion that the County and LASD are vicarious liability under California Government Code section 815.2.

Accordingly, the Court finds that Plaintiffs sufficiently plead their seventh cause of action for negligence—wrongful death, and the Court **DENIES** the Motion as to this claim.

### 2.    Medical Malpractice

In Plaintiffs' seventh cause of action for medical malpractice, they allege Doe Defendants were acting within the scope of their employment as County medical staff when they negligently failed to provide medical care to Martinez.  (FAC ¶¶ 132–37.)  Plaintiffs contend the County and LASD are consequently vicariously liable for Doe Defendants' negligence.  (FAC ¶¶ 132–37.)  Defendants move to dismiss this claim based solely on the argument that it is duplicative of Plaintiffs' wrongful death claim and should fail for the same reasons. (Mot. 21–23.)  The Court disagrees that the sixth and seventh claim are "one and the same," (*id.*), and finds that Plaintiffs fail to sufficiently plead medical malpractice.

To state a claim for medical malpractice, the plaintiff must establish: (1) "the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise"; (2) "a breach of that duty"; (3) "a proximate causal connection"; and (4) "actual loss or damage resulting from the professional's negligence." *Borrayo v. Avery*, 2 Cal. App. 5th 304, 310 (2016) (quoting *Hanson v. Grode*, 76 Cal. App. 4th 601, 606 (1999)).  As above, a municipality's liability depends on the liability of its employees. *Walker*, 192 Cal. App. 3d at 1397.

Here, Plaintiffs allege Doe Defendants were "C[ounty] medical staff assigned to the C[ounty] Jails, including Twin Towers" and Martinez was under their treatment and care.  (FAC ¶ 133.)  Plaintiffs assert the Does breached their duty of care to Martinez and Plaintiffs by "negligently, carelessly and unskillfully" caring for Martinez, and by failing to "classify," "appropriately diagnose," "detect, monitor, and follow-up," or provide additional physician care for Martinez.  (*Id.*)  Plaintiffs conclude that the Does' "acts and omissions" caused Martinez's death, and the County and LASD are vicariously liable for the Does' negligence.  (*Id.* ¶¶ 134, 137.)

As pleaded, the cause of action is impermissibly speculative and conclusory. Preliminarily, it is unclear from Plaintiffs' allegations whether Does treated, observed,

or even had contact with Martinez before Baltodano found him to be unresponsive. (*See generally* FAC.) Furthermore, Plaintiffs do not allege facts sufficient to elucidate what the Does purportedly did or did not do that Plaintiffs contend was negligent. Plaintiffs' only factual allegation concerning medical treatment is that "[p]ersonnel administered glucose" to Martinez before paramedics arrived to transport him to the hospital. (*Id.* ¶ 30.) However, it is unclear whether Plaintiffs have named these "personnel" as a Does in this action, and Plaintiffs do not allege that the administration of glucose was inappropriate or unreasonable under the circumstances. Although the Court accepts Plaintiffs' well-pleaded factual allegations as true, it does not accept such conclusory and speculative allegations, and declines to make the inferential leaps necessary here to complete Plaintiffs' cause of action for medical malpractice. *See Iqbal*, 556 U.S. at 679 (explaining "pleadings that . . . are no more than conclusions[] are not entitled to the assumption of truth").

Accordingly, the Court finds that Plaintiffs fail to sufficiently plead their seventh cause of action for negligence—medical malpractice against Doe Defendants, the County, and LASD. As such, the Court **GRANTS** the Motion as to this claim, with leave to amend.

**E.    Bane Act, California Civil Code Section 52.1**

Lastly, Plaintiffs allege in their ninth cause of action that Defendants, except Ramirez-Hernandez and Villanueva, violated California's Bane Act because they were aware of Martinez's medical condition, and were threatening, coercive, and recklessly disregarded Martinez's constitutional rights concerning his medical needs. (FAC ¶¶ 144–54.) Defendants argue that Plaintiffs fail to allege facts reflecting any threat, intimidation, or coercion, and thus fail to sufficiently plead this claim. (Mot. 23–24.) The Court finds that Plaintiffs fail to plead a cause of action under the Bane Act.

The Bane Act, California Civil Code section 52.1, enacted to address hate crimes, "civilly protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out '*by threats,*

*intimidation or coercion.*'"  *Reese v. County of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (emphasis added) (quoting *Venegas v. County of Los Angeles*, 153 Cal. App. 4th 1230, 1238 (2007)).  To state a claim under the Bane Act, a plaintiff must allege: (1) the defendant interfered with or attempted to interfere with the plaintiff's constitutional or statutory right by threatening or committing violent acts; (2) the plaintiff reasonably believed that if he exercised his constitutional right the defendant would commit violence against him; (3) the defendant injured the plaintiff to prevent him from exercising his constitutional right or to retaliate against the plaintiff for having exercised his constitutional right; (4) the plaintiff was harmed; and (5) the defendant's conduct was a substantial factor in causing the plaintiff's harm.  *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 882 (2007) (quoting CACI No. 3025).

Here, Plaintiffs fail to state a claim under the Bane Act for the same reasons discussed in the Prior Order: (1) Plaintiffs do not allege any facts that indicate Defendants used threats or committed violent acts to interfere with Martinez's Fourth and/or Fourteenth Amendment rights, (2) Plaintiffs do not allege that Martinez reasonably believed Defendants would commit violence against him if he exercised his constitutional rights, and (3) Plaintiffs do not allege that Defendants injured Martinez to prevent him from exercising his constitutional rights.  (*See generally* FAC; Prior Order 13–15.)

Plaintiffs urge the Court to find that alleging "threats, intimidation, or coercion" is not a necessary component for their Bane Act claim.  (*See* FAC ¶¶ 148–49; Opp'n 12–13.)  The basis of this confusion stems from Plaintiffs' misunderstanding of the holding in *Cornell v. City & County of San Francisco*, 17 Cal. App. 5th 766 (2017).  In *Cornell*, the court held that when the constitutional violation itself contains an element of threat, intimidation, or coercion, the plaintiff does not need to plead an additional, independent element of coercion.  *Id.* at 801–04.  The plaintiff in *Cornell* was subject to an unlawful search and seizure, and such violations of the Fourth and

Fifth Amendment necessarily contain an element of coercion (e.g., a person who is being detained and does not feel free to leave is essentially being forced to stay). *Id.* at 801–02 (acknowledging the "inherent" coercion present in a wrongful detention). The Fourteenth Amendment, particularly the right to medical care as is being alleged by Plaintiffs, does not have the same element of inherent coercion. If Plaintiffs wish to maintain a Bane Act claim for violation of Martinez's Fourteenth Amendment, Plaintiffs must necessarily allege some sort of additional coercion or threat to satisfy the requirements of the Bane Act. Plaintiffs have not done so here.

Additionally, Plaintiffs state that their Bane Act claim may also apply to a violation of Martinez's *Fourth* Amendment rights. (*See* FAC ¶ 146.a. (alleging Defendants interfered with Martinez's "right to be free from objectively unreasonable treatment and deliberate indifference to Decedent's serious medical needs while in custody as a pretrial detainee as secured by the *Fourth* and/or Fourteenth Amendments").) Plaintiffs do not explain how or why the Fourth Amendment could apply to the instant case. (*See generally* FAC; Opp'n.) While the Court is skeptical that Plaintiffs will be able to marshal facts redeeming this cause of action on the third attempt or supporting a violation of Martinez's Fourth Amendment rights, it nevertheless grants leave to amend to allow Plaintiffs the opportunity to better explain their Fourth Amendment claim.

Accordingly, the Court finds Plaintiffs fail to sufficiently plead their ninth cause of action under the Bane Act, whether for violation of Fourth or Fourteenth Amendment rights. As such, the Court **GRANTS** the Motion as to this claim, with leave to amend.

## V.    CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss. (ECF No. 38.) Specifically, the Court **GRANTS** Defendants' Motion and **DISMISSES** Plaintiffs' fourth, fifth, seventh, and ninth causes of action, **WITH LEAVE TO AMEND**. The Court

**DENIES** Defendants' Motion as to Plaintiffs' first, second, third, and sixth causes of action.

If Plaintiffs wish to amend, they must file a Second Amended Complaint no later than twenty-one days from the date of this Order, in which case Defendants shall answer or otherwise respond within fourteen days of the filing. If Plaintiffs do not timely amend, the dismissal of the fourth, fifth, seventh, and ninth causes of action shall be deemed a dismissal with prejudice as of the lapse of the deadline to amend, and the case will proceed as to the first, second, third, sixth, and eighth causes of action.

**IT IS SO ORDERED.**

August 21, 2024

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**